**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

ANTHONY DESPARROIS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CHERVON NORTH AMERICA, INC.,
Defendant.

Case No.: 1:25-cv-00052

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Anthony Desparrois ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Complaint against Chervon North America, Inc., ("Chervon" or "Defendant") and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1. Plaintiff brings this class action lawsuit as an individual who purchased Defendant Chervon's SKIL PWRCORE 40 Lithium 5.0Ah 40V Batteries (hereinafter "Products" or "Batteries") for normal household use.

2. Unfortunately, the Products are defective because they can catch fire.[1] The design of the Products result in Batteries that heat up and catch fire. The Products were formulated, designed, manufactured, marketed, advertised, distributed, and sold by Defendant. The Products include:

---

[1] https://www.cpsc.gov/Recalls/2025/Chervon-North-America-Recalls-SKIL-40V-50Ah-Lithium-Ion-Batteries-for-SKIL-Lawnmowers-and-Outdoor-Tools-Due-to-Fire-and-Burn-Hazard

SKIL brand 40V 5.0Ah Lithium-Ion Batteries that were manufactured before May 1, 2021. "SKIL" and "PWRCORE 40" are printed on the batteries. The recalled batteries were sold individually under the model number BY8708-00 for use with all SKIL 40V tools and were also sold in a combination kit with SKIL 40V Brushless 20-in Push Mowers (Model #PM 4910-10) or SKIL 40V Brushless 20-in Self-Propelled Mowers (Model #SM4910-10). Only the battery is recalled. The model number BY8708-00 and manufacturing date code, which is the first three digits of the 9-digit serial number, are located on a nameplate on the top of the battery pack near the battery terminals.[2]

3. The following manufacturing date codes are included in the recall.[3]

| Date Code (in Serial Number) | Manufacturing Date |
|---|---|
| 911XXXXXX | Nov-19 |
| 912XXXXXX | Dec-19 |
| 026XXXXXX | Jun-20 |
| 027XXXXXX | Jul-20 |
| 028XXXXXX | Aug-20 |
| 029XXXXXX | Sep-20 |
| 030XXXXXX | Oct-20 |
| 031XXXXXX | Nov-20 |
| 121XXXXXX | Jan-21 |
| 122XXXXXX | Feb-21 |
| 123XXXXXX | Mar-21 |
| 124XXXXXX | Apr-21 |

4. Each of the Products is manufactured, distributed, marketed, and sold by Defendant to consumers across the United States. The Products are sold at Lowe's and other hardware and home improvement stores nationwide and online at Amazon.com, Walmart.com and Lowes.com.

[2] *Id.*
[3] *Id.*

5. The Product is defective because each individual lithium-ion battery can overheat and catch on fire. Despite this known fire risk, Defendant represented that the Products are safe and effective for their intended use.

6. Other manufacturers formulate, produce, and sell non-defective Batteries with formulations and production methods that do not cause the products to catch fire, which is evidence that the fire risk inherent with Defendant's Products is demonstrably avoidable.

7. Feasible alternative formulations, designs, and materials are currently available and were available to Defendant at the time the Products were formulated, designed, and manufactured.

8. Plaintiff purchased the Product, while lacking the knowledge that Product could catch fire, thus causing serious harm to those who use such Products.

9. Because Plaintiff was injured by the Products and all consumers purchased the worthless and dangerous Products, they have suffered losses.

10. As a result of the above losses, Plaintiff seeks damages and equitable remedies.

## PARTIES

11. Plaintiff Anthony Desparrois is a resident and citizen of Chicago, Illinois. Chicago is located within Cook County.

12. Plaintiff purchased one of Defendant's recalled Products.

13. Defendant Chervon North America, Inc., is a foreign corporation organized and existing under the laws of the State of Delaware, with a principal place of business located at 1203 East Warrenville Road, Naperville, Illinois 60563.

14. Upon information and belief, the planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations concerning the Products and the claims alleged herein were primarily carried out at Defendant's headquarters and facilities within Illinois.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) because: (1) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states.

16. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

17. This Court has personal jurisdiction over Defendant because Defendant has substantial aggregate contacts with this District, including engaging in conduct in this District that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and because they purposely availed themselves of the laws of the United States and Illinois and have caused its products to be disseminated in this District.

18. Venue in this District and Court is proper pursuant to 28 U.S.C. §1391(b) because a substantial part of the conduct or omissions giving rise to Plaintiff's claims occurred in this District, Chervon transacts business in this District, and Defendant has intentionally availed itself of the laws and markets within this District.

## FACTUAL ALLEGATIONS

19. The Products at hand are lithium-ion batteries used for charging an array of tool applications.

20. In more detail, these products were made in China and imported by Chervon North America, Inc.

21. The Consumer Product Safety Commission has received 100 reports of thermal incidents involving the batteries including overheating, melting, smoking and fire. These included eight reports of minor burns and/or smoke inhalation and 49 reports of related property damage.

22. The recalled batteries were sold individually under the model number BY8708-00 for

use with all SKIL 40V tools.[4]




Recalled SKIL 40V 5.0Ah Battery, model BY8708-00

**Chervon's Misrepresentations and Omissions are Actionable**

23. Plaintiff bargained for a Product that was safe to use. Defendant's fire prone Products were, and are, unsafe. As a result of the risk of fire, Plaintiff, and all others similarly situated, were

[4] *Id.*

deprived the basis of their bargain given that Defendant sold them a product that could overheat and spontaneously ignite or catch fire. This dangerous fire risk inherent to the Products renders them unmerchantable and unfit for their normal intended use.

24. The Products are not fit for their intended use by humans as they expose consumers to a fire hazard. Plaintiff is further entitled to damages for the injury sustained in being exposed to such danger, damages related to Defendant's conduct, and injunctive relief.

25. Plaintiff seeks to recover damages because the Products are adulterated, defective, worthless, and unfit for human use due to the risk of catching fire.

26. Defendant engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding the risk of catching fire affecting the Products.

27. Indeed, no reasonable consumer, including Plaintiff, would have purchased the Products had they known of the material omissions of material facts regarding the possibility of the Products overheating and catching on fire.

**PLAINTIFF'S FACTUAL ALLEGATIONS**

28. Plaintiff bought a SKIL battery for personal use.

29. On the date of the Products' recall by Chervon, December 19, 2024, Plaintiff was in possession of Defendant's product. Plaintiff intended to purchase a Product that would be safe for normal use, but instead was sold a dangerous fire hazard that eventually overheated and melted.

30. If Plaintiff had been aware of the risk fire in the Products, he would not have purchased the Product or would have paid significantly less.

31. As a result of Defendant's actions, Plaintiff has incurred damages.

32. If the Products and packaging were reformulated to be safe and avoid overheating and sudden ignition, Plaintiff would choose to purchase the Products again in the future.

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings this case as a class action pursuant to Federal Rule of Civil Procedure 23 on his own behalf and as the Class representatives on behalf of the following:

> **Nationwide Class:** All persons within the United States who purchased the Products within the applicable statute of limitations.
>
> **Illinois Subclass:** All persons within Illinois who purchased the Products within the applicable statute of limitations.

34. The Nationwide Class and Illinois Subclass shall collectively be referred to herein as the "Classes."

35. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

36. Excluded from the Classes are governmental entities, Chervon North America, Inc., its officers, directors, affiliates, legal representatives, and employees.

37. This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

38. **Numerosity** – Federal Rule of Civil Procedure 23(a)(1). The Classes number at least in the thousands of persons. As a result, joinder of all Class members in a single action is impracticable. Class members may be informed of the pendency of this class action through a variety of means, including, but not limited to, direct mail, email, published notice, and website posting.

39. **Existence and Predominance of Common Questions of Law and Fact** – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3). There are questions of fact and law common to the Classes that predominate over any question affecting only individual members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

a. whether Chervon's advertising, merchandising, and promotional materials

directed to Plaintiff were deceptive regarding the risks posed by Chervon's Products;

b. whether Chervon made representations regarding the safety of the Products;

c. whether Chervon omitted material information regarding the safety of the Products;

d. whether Chervon Products were merchantable;

e. whether Chervon violated the consumer protection statutes invoked herein;

f. whether Chervon's conduct alleged herein was fraudulent; and

g. whether Chervon was unjustly enriched by sales of the Products.

40. The questions set forth above predominate over any questions affecting only individual persons concerning sales of Chervon's Products throughout the United States and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of Plaintiff's claims.

41. **Typicality** – Federal Rule of Civil Procedure 23(a)(3). Plaintiff's claims are typical of those of the Classes in that the Class Members uniformly purchased Chervon's Products and were subjected to Chervon's uniform merchandising materials and representations at the time of purchase.

42. **Superiority** – Federal Rule of Civil Procedure 23(b)(3). A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class Members could create a risk of inconsistent adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class Members to protect their interests. In addition, it would be impracticable and undesirable for every member of the Classes who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts

and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class Members.

43. **Adequacy** – Federal Rule of Civil Procedure 23(a)(4). Plaintiff is an adequate representative of the Classes because he is a member of the Classes and his interests do not conflict with the interests of the Classes that he seeks to represent. The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and his undersigned counsel. Counsel is experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

44. **Insufficiency of Separate Actions** – Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Chervon. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

45. **Declaratory and Injunctive Relief** – Federal Rule of Civil Procedure 23(b)(2). Chervon has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiff seeks to certify Classes to enjoin Chervon from selling or otherwise distributing the Products until such time that Defendant can demonstrate to the Court's satisfaction that the Products confer the advertised benefits and are otherwise safe to use as intended.

46. Additionally, the Classes may be certified under Rule 23(b)(1) and/or (b)(2) because:

a. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for Chervon;

b. The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

## CAUSES OF ACTION

### COUNT I
### Unjust Enrichment
### (On Behalf of the Nationwide Class and, alternatively, the Subclass)

47. Plaintiff incorporates the allegations set forth in Paragraphs 1-46 as though set forth fully herein.

48. Plaintiff, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's defective and worthless Products. These monies were not gifts or donations but were given in exchange for the Products.

49. Defendant voluntarily accepted and retained these benefits.

50. Because this benefit was obtained unlawfully, namely by selling and accepting

compensation for products unfit for human use, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

51. Defendant received benefits in the form of revenues from purchases of the Products to the detriment of Plaintiff, and the other members of the Classes, because Plaintiff, and members of the Classes, purchased mislabeled products that were not what Plaintiff and the Classes bargained for and were not safe and effective, as claimed.

52. Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiff and the other members of the Classes. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiff, and members of the Classes, because they would have not purchased the Products had they known the true facts.

53. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Nationwide Class for its unjust enrichment, as ordered by the Court.

**COUNT II**
**Breach of Express Warranty**
**(On Behalf of the Nationwide Class and, alternatively, the Subclass)**

54. Plaintiff incorporates the allegations set forth in Paragraphs 1-46 as though set forth fully herein.

55. Plaintiff, and each member of the Classes, formed a contract with Defendant at the time they purchased the Products.

56. The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging and through marketing and advertising.

57. This labeling, marketing, and advertising constitute express warranties and became part

of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the Classes and Defendant.

58. As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Product is safe for its intended use.

59. Plaintiff and the members of the Classes performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

60. Defendant breached express warranties relating to the Products and their qualities because Defendant's Product possessed the possibility to overheat and cause injury, even when correctly used, at the time of purchase and the Products do not conform to Defendant's affirmations and promises described above.

61. Plaintiff and each member of the Classes would not have purchased the Products had they known the true nature of the risk of the Product overheating and burning those who used the Products.

62. As a result of Defendant's breach of warranty, Plaintiff and each Class Member suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**COUNT III**
**Breach of Implied Warranty**
**(On Behalf of the Nationwide Class and, alternatively, the Subclass)**

63. Plaintiff incorporates the allegations set forth in Paragraphs 1-46 as though set forth fully herein.

64. Defendant is a merchant and was at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Products.

65. The Products are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Products, as goods, were purchased.

66. Defendant entered into agreements with retailers to sell its Products to be used by Plaintiff and Class Members for personal use.

67. The implied warranty of merchantability included with the sale of each Product means that Defendant guaranteed that the Products would be fit for the ordinary purposes for which batteries are used and sold, and were not otherwise injurious to consumers. The implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendant, and Plaintiff and the Class Members.

68. Defendant breached the implied warranty of merchantability because the Products are not fit for their ordinary purpose of providing reasonably reliable and safe operation for users because the Products have a risk of overheating and catching on fire. Therefore, the Products are not fit for their particular purpose of providing safe power to tools.

69. Defendant's warranty expressly applies to the purchaser of the Products, creating privity between Defendant and Plaintiff and Class Members.

70. However, privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties and its sale through retailers. Defendant's retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

71. Defendant has been provided sufficient notice of its breaches of implied warranties associated with the Products. Defendant was put on constructive notice of its breach through its review of consumer complaints and other reports.

72. Had Plaintiff, Class Members, and the consuming public known that the Products could overheat and cause injury, they would not have purchased the Products or would have paid less for

them.

73. As a direct and proximate result of the foregoing, Plaintiff and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**COUNT IV**
**Breach of the Implied Warranty of Merchantability**
**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

74. Plaintiff incorporates the allegations set forth in Paragraphs 1-46 as though set forth fully herein.

75. Plaintiff brings this claim against Defendant, on behalf of himself and the other members of the Nationwide Class, and, alternatively, the State Subclass (the "Classes").

76. Defendant is a merchant engaging in the sale of goods to Plaintiff and the Classes.

77. There was a sale of goods from Defendant to Plaintiff and the Classes.

78. As the developer, manufacturer, marketer, distributor, and/or seller of the defective Products, Defendant impliedly warranted to Plaintiff and the Classes that its Products were fit for their intended purpose in that they would be safe for Plaintiff and the Classes to use as a power source for tools.

79. Contrary to these representations and warranties, the Products were not fit for their ordinary use, and did not conform to Defendant's affirmations of fact and promises as use of the Products was accompanied by the risk of adverse effects that do not conform to the packaging.

80. Defendant breached the implied warranty in the contract for the sale of the Products by knowingly selling to Plaintiff and the Classes a product that Defendant knew would expose Plaintiff and the Classes to significant risks, thus meaning Defendant knew that the Products

were not fit for their intended purpose.

81. Defendant was on notice of this breach, as they were made aware of the adverse health effects caused by the overheating and potential ignition that can result from the use of their Products.

82. Plaintiff and the Classes did not receive the goods as bargained for because the goods they received were not merchantable as they did not conform to the ordinary standards for goods of the same average grade, quality, and value.

83. Plaintiff and members of the Classes are the intended beneficiaries of Defendant's implied warranties.

84. The Products were not altered by Plaintiff or the members of the Classes.

85. Plaintiff and members of the Classes used the Products in the ordinary manner in which such devices were intended to be used.

86. The Products were defective when they left the exclusive control of Defendant.

87. The Products were defectively designed and/or manufactured and unfit for their intended purpose, and Plaintiff and members of the Classes did not receive the goods that they bargained for.

88. Plaintiff and members of the Classes purchased the Products that contained the Defect, which was undiscoverable by them at the time of purchase and at any time during the class period.

89. As a result of the defect in the Products, Plaintiff and members of the Classes have suffered damages including, but not limited to, the cost of the defective product, loss of use of the product and other related damage.

90. Defendant breached the implied warranty of merchantability to the Plaintiff and Class

members.

91. Thus, Defendant's attempt to limit or disclaim the implied warranties in a manner that would exclude coverage of the Defect is unenforceable and void.

92. Plaintiff and Class Members have been damaged by Defendant's breach of the implied warranties.

93. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

**COUNT V**
**Fraudulent Concealment**
**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

94. Plaintiff incorporates the allegations set forth in Paragraphs 1-46 as though set forth fully herein.

95. Plaintiff brings this claim against Defendant, on behalf of himself and the other members of the Nationwide Class, and, alternatively, the State Subclass (the "Classes").

96. Defendant had a duty to disclose material facts to Plaintiff and the Classes given their relationship as contracting parties and intended users of the Products. Defendant also had a duty to disclose material facts to Plaintiff and the Classes, namely that it was in fact manufacturing, distributing, and selling harmful products unfit for human use, because Defendant had superior knowledge such that the transactions without the disclosure were rendered inherently unfair.

97. During this time, Plaintiff, and members of the Classes, were using the Products without knowing the Products could overheat and catch on fire.

98. Defendant failed to discharge its duty to disclose these materials facts.

99. In so failing to disclose these material facts to Plaintiff and the Classes, Defendant intended to hide from Plaintiff and the Classes that they were purchasing the Products with harmful defects that were unfit for human use, and thus acted with scienter and/or an intent to defraud.

100. Plaintiff and the Classes reasonably relied on Defendant's failure to disclose insofar as they would not have purchased the defective Products manufactured and sold by Defendant had they known they possessed this fire risk.

101. As a direct and proximate cause of Defendant's fraudulent concealment, Plaintiff, and the Classes, suffered damages in the amount of monies paid for the defective Products.

102. As a result of Defendant's willful and malicious conduct, punitive damages are warranted.

**COUNT VI**
**Strict Liability – Failure to Warn**
**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

103. Plaintiff incorporates the allegations set forth in Paragraphs 1-46 as though set forth fully herein.

104. Defendant had a duty to warn Plaintiff and the Class Members regarding the Defect and the true risks associated with the Products.

105. Defendant was in a superior position to know of the Defect, yet, as outlined above, chose to do nothing when the defect became known to them.

106. Defendant failed to provide adequate warnings regarding the risks of the Products after knowledge of the Defect was known only to them.

107. Defendant had information regarding the true risks but failed to warn Plaintiff and members of the Classes to strengthen their warnings.

108. Despite their knowledge of the Defect and obligation to unilaterally strengthen the

warnings, Defendant instead chose to actively conceal this knowledge from the public.

109. Plaintiff and members of the Classes would not have purchased, chosen, and/or paid for all or part of the Products if they knew of the Defect and the risks of purchasing the Products.

110. This Defect proximately caused Plaintiff's and Class Members' damages.

111. The Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT VII
**Strict Liability – Design Defect**
**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

112. Plaintiff incorporates the allegations set forth in Paragraphs 1-46 as though set forth fully herein.

113. Plaintiff brings this claim against Defendant, on behalf of himself and the other members of the Nationwide Class, and, alternatively, the State subclass (the "Classes").

114. The design of the Products was defective and unreasonably dangerous.

115. The risk of overheating and igniting into flames while Plaintiff and members of the Classes used the Products, caused exposure to materials with harmful effects.

116. The design of the Products rendered them not reasonably fit, suitable, or safe for their intended purpose.

117. The risk of fire associated with the Products outweighed the benefits and rendered the Products unreasonably dangerous.

118. There are other Products and other batteries that do not overheat or burst into flames, meaning that there were other means of production available to Defendant.

119. The Products were unreasonably unsafe, and the Products should have had stronger and

clearer warnings or should not have been sold in the market.

120. The Products did not perform as an ordinary consumer would expect.

121. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

**COUNT VIII**
**Negligent Failure to Warn**
**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

122. Plaintiff incorporates the allegations set forth in Paragraphs 1-46 as though set forth fully herein Plaintiff brings this claim against Defendant, on behalf of himself and the other members of the Nationwide Class, and, alternatively, the State subclass (the "Classes").

123. Defendant owed Plaintiff and Class Members a duty of care and to warn of any risks associated with the Products.

124. Defendant knew or should have known of the defect but failed to warn Plaintiff and members of the Classes.

125. Plaintiff had no way of knowing of the Product's latent defect as an ordinary consumer would be unable to discover the Product could catch on fire.

126. Defendant's breach of duty caused Plaintiff and Class Members economic damages and injuries in the form of burns or smoke inhalation.

127. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

**COUNT IX**
**Negligent Design Defect**
**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

128. Plaintiff incorporates the allegations set forth in Paragraphs 1-46 as though set forth fully herein.

129. Plaintiff brings this claim against Defendant, on behalf of himself and the other members of the Nationwide Class, and, alternatively, the State subclass (the "Classes").

130. Defendant owed Plaintiff and the Classes a duty to design the Products in a reasonable manner.

131. The design of the Products was defective and unreasonably dangerous, causing exposure to fire and smoke with possibly deadly effects.

132. The design of the Products caused them to be not fit, suitable, or safe for their intended purpose. The dangers of the Products outweighed the benefits and rendered the products unreasonably dangerous.

133. There are other batteries that do not overheat or catch on fire.

134. The risk/benefit profile of the Products was unreasonable, and the Products should have had stronger and clearer warnings or should not have been sold in the market.

135. The Products did not perform as an ordinary consumer would expect.

136. The Defendant's negligent design of the Products was the proximate cause of damages to the Plaintiff and the Class Members.

137. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

**<u>COUNT X</u>**
**Negligence**

138. Plaintiff incorporates the allegations set forth in Paragraphs 1-46 as though set forth fully herein.

139. Defendant owed a duty to consumers to produce a product that was safe for its intended use.

140. Defendant breached this duty by producing a product that was dangerous for its intended use. Defendant knew or should have known that the portable power bank was at risk of overheating and igniting causing injuries once exposed to humans.

141. As a direct result of this breach, Plaintiff suffered injury in that Plaintiff has been deprived of their benefit of the bargain. Plaintiff's injuries were caused in fact by Defendant's breach. But for Defendant's negligent manufacture and improper oversight, Plaintiff would not have been injured.

142. Further, Plaintiff's injuries were proximately caused by Defendant's breach. It is foreseeable that a poorly designed battery would cause injury if it were to overheat and catch fire, and it is foreseeable that a user would lose their benefit of the bargain if they purchased a dangerous and worthless device.

143. Plaintiff suffered damages in an amount to be determined at trial and Plaintiff is entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes alleged herein, respectfully request that the Court enter judgment in his favor and against Defendant as follows:

A. For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives for the Classes and Plaintiff's attorneys as Class Counsel;

B. For an order declaring the Defendant's conduct violates the causes of action referenced herein;

C. For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive relief as pleaded or as the Court may deem proper; and

H. For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all claims in this Complaint and of any and all issues in this action so triable as of right.

Dated: January 3, 2025

Respectfully submitted,

*/s/ Roy T. Willey, IV*
Roy T. Willey, IV (Fed ID # 101010)
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Email: roy@poulinwilley.com